Arron THOMPSON, Plaintiff,

v.

ARCHER DANIELS MIDLAND COMPANY and ADM Trucking, Inc., Defendants.

No. 99–CV–2097.

United States District Court,
C.D. Illinois,
Urbana Division.

Dec. 5, 2001.

Melissa M. McGrath, Thomson & Weintraub, Bloomington, IL, Attorneys for Plaintiff.

Timothy A. Wolfe, Joseph E. Tilson, Meckler, Bulger & Tilson, Chicago, IL, Attorneys for Defendant.

## *ORDER*

McCUSKEY, District Judge.

On September 7, 1999, Plaintiff, Arron Thompson, filed his First Amended Complaint (# 16) against Defendants, Archer Daniels Midland Company (ADM) and ADM Trucking, Inc. Plaintiff claimed that he was discriminated against in violation of the Americans with Disabilities Act (ADA) (42 U.S.C. § 12101 et seq.). This case is before the court for ruling on Defendants' Motion for Summary Judgment (# 50) and Plaintiff's Motion for Summary Judgment (# 52). Following this court's careful and thorough review of the documents presented by the parties and the arguments of the parties, this court concludes that Plaintiff has not presented sufficient evidence to show that he was disabled as defined in the ADA. Accordingly, Defendants' Motion for Summary Judgment (# 50) is GRANTED.

## FACTS

Plaintiff was hired as an over-the-road truck driver by ADM Trucking on June 9, 1995. On August 14, 1995, approximately seven weeks later, Plaintiff slipped on the steps of the tanker he was hauling. Plaintiff did not fall, but hurt his back. Plaintiff's physician placed him off work because of lumbar strain. On August 19, 1995, Plaintiff's doctor imposed work limitations of one hour of driving per day and no lifting over 30 pounds. On August 29, 1995, Plaintiff's doctor gave Plaintiff a note which stated, "I have advised [Plaintiff] to change vocations due to his back problem." Plaintiff called Jim Davis, who was the terminal manager at that time, and told him he had been released for light duty. Davis told Plaintiff that there was no light duty work available. On September 19, 1995, and on October 26, 1995, Plaintiff's doctor gave Plaintiff light duty releases which required no lifting over 25 pounds and no more than one hour of driving per day. On December 20, 1995, Plaintiff saw a different doctor who imposed a permanent restriction of "[n]o lifting above 35 pounds except in extremely rare occasions with limitation routinely to be set at 35 pounds or less. [Plaintiff] may return to work on 12/27/95."

Plaintiff did not return to work at ADM Trucking. Davis testified that truck drivers generally have to unload the products they haul and often are required to lift a hose which weighs approximately 80 pounds which is used for delivering liquid product. Sam Richardson, ADM Trucking's assistant vice president of operations, testified that ADM Trucking did not return Plaintiff to his job because it deter-

mined that the permanent 35–pound lifting restriction was inconsistent with his job duties. Richardson also testified that the other jobs available at ADM Trucking, including wash bay, maintenance and fast lane positions, required lifting more than 35 pounds. Plaintiff was granted a leave of absence with benefits. Plaintiff also received worker's compensation benefits. Plaintiff lost his seniority after 12 months of leave, pursuant to the terms of the applicable labor· agreement, and his employment was terminated.

On May 4, 1999, Plaintiff filed a Complaint (# 1) in this court against Defendant ADM. Plaintiff alleged that ADM discriminated against him on the basis of his disability, in violation of the ADA. On July 16, 1999, ADM filed a Motion to Dismiss (# 8) arguing that Plaintiff was not employed by ADM but was rather employed by ADM Trucking, a wholly owned subsidiary of ADM. On August 20, 1999, this court entered an Order (# 15) which denied ADM's Motion to Dismiss and allowed Plaintiff leave to file an amended complaint adding ADM Trucking as an additional party. On September 7, 1999, Plaintiff filed his First Amended Complaint (# 16) against ADM and ADM Trucking. Plaintiff alleged that ADM is liable because it is the alter ego of ADM Trucking.

As part of discovery in this case, Plaintiff's deposition was taken on August 29, 2000. Plaintiff testified that he had back surgery in 1980 and 1991. He testified that he is limited in bending forward and cannot bend over to tie his shoes. He was asked if there were any other physical activities that he could not perform and responded, "With my activities that I do, that would probably be about it." He testified that he does not know if he still has a lifting restriction and stated that he sometimes lifts more than 35 pounds. He stated that he is able to lift his daughters,

who weigh 35 and 50 pounds. Plaintiff testified that he is cautious about what he does, and does not participate in sports because of that caution. However, he stated that he "really [hasn't] given up anything." He testified that he drives and is able to take care of himself. He stated that he takes a walk every evening and rides a bike with his son once or twice a week.

Plaintiff testified that he believed he could have performed his job duties at ADM Trucking "with a reasonable time to heal." He stated that he thought he could have done the job a few weeks after his injury. Plaintiff testified that, after leaving ADM Trucking, he purchased his own semitruck. In August 1997, he accepted a position as a driver for JMH Trucking. In his position as a driver for JMH Trucking, he drove between Tazewell County and Chicago, Illinois, two times per day. He was employed there until April 1998. In April 1998, Plaintiff went to work as a driver hauling grain and rock for Dan Wetstein, a central Illinois farmer. Plaintiff testified that there was some lifting involved in performing these jobs, but not heavy lifting. In May and June 1998, Plaintiff worked as a truck driver for Don Lefler hauling grain. In August 1998, Plaintiff went to work as a truck driver for Krumholz Trucking in Eureka, Illinois, hauling rock and grain. He drove for Krumholz Trucking for approximately one year.

On October 5, 2000, after the deposition was taken, Plaintiff filed a supplement to his response to Defendants' Interrogatory No. 3 which asked him to identify the major life activities in which he claimed he was substantially impaired. His previous response stated that he "suffered Lumbar strain and was subsequently diagnosed with Degenerative Lumbar Spine Disease, restricting his ability to lift over 35

pounds." In his supplemental response, Plaintiff stated:

> Plaintiff's medical condition restricts his ability at times from getting out of bed, having normal sexual relations with his spouse, participating in many physical endeavors including but not limited to those with his children, standing, sitting, walking and performing daily household tasks.

> Plaintiff's condition causes him to take longer to dress in the morning because he is not able to bend and move as easily as a normal person. On some occasions he needs assistance in putting his shoes and socks on. His condition also disturbs his sleep as well as his ability to have normal bowel movements on a daily basis.

On November 28, 2000, Defendants took a further deposition of Plaintiff to question him about this supplemental response. Plaintiff testified that there were occasions when he had trouble getting out of bed due to pain. On those occasions, he does stretching exercises before getting up. He testified that there were times when it was difficult for him to get out of bed for a couple of weeks.[1] Plaintiff testified that, on the occasions where he had difficulty getting out of bed, it took him "a few minutes" to get out. Plaintiff also testified that there have been a few occasions when it was too painful for him to walk. Plaintiff testified that he does not do household chores such as moving furniture or cleaning that requires him to bend or be on his knees. He testified that he cuts the grass occasionally and has done some painting.

On March 16, 2001, Defendants filed their Motion for Summary Judgment (# 50). Defendants argued that Plaintiff's ADA claim fails because: (1) Plaintiff did not have a "disability" because his back problems did not substantially limit him in any major life activity; (2) Plaintiff was not a "qualified individual with a disability" because he could not perform the essential functions of an over-the-road driver; and (3) Plaintiff cannot prove that his employer failed to provide him with a reasonable accommodation where he received a 12–month medical leave of absence with benefits. Defendants also argued that ADM cannot be liable for any violation of the ADA because ADM never employed Plaintiff. Defendants also filed a Memorandum of Law and Exhibits (# 51) in support of their Motion for Summary Judgment. Defendants were later allowed to file a Supplemental Statement of Undisputed Facts (# 61).

On March 19, 2001, Plaintiff filed his Motion for Summary Judgment (# 52). Plaintiff sought summary judgment on the limited issue of whether ADM has joint liability with ADM Trucking for discriminatory conduct under the ADA. Both Motions for Summary Judgment are now fully briefed and ready for ruling.

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

---

1. This court agrees with Defendants that Plaintiff's statement in his Additional Statement of Undisputed Facts and in his Response to Defendants' Undisputed Facts that "[o]n some occasions Plaintiff cannot get out of bed for a couple of weeks" is a misrepre- sentation. Plaintiff clearly and unambiguously stated that there are times when he has difficulty getting out of bed for a couple of weeks because of back pain. He did not testify that he could not get out of bed at all for a couple of weeks.

al fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, a plaintiff must respond to the defendant's motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *Michael v. St. Joseph County*, 259 F.3d 842, 845 (7th Cir.2001). A genuine issue for trial "exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir.2000), *quoting Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir.1999). In making this determination, the court must consider the evidence in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, to successfully oppose a motion for summary judgment, a plaintiff must do more than raise a "metaphysical doubt" as to the material facts, and instead must present definite, competent evidence to rebut the motion. *Michael*, 259 F.3d at 845.

## II. DISABILITY UNDER THE ADA

■ To establish disability discrimination in violation of the ADA, Plaintiff must show: (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job either with or without reasonable accommodation; and (3) he suffered from an adverse employment action because of the disability. *Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 950 (7th Cir.2000). Plaintiff's "threshold burden" is to establish that he is disabled as that term is defined in the ADA. *Moore*, 221 F.3d at 950; *Huizenga v. Elkay Mfg.*, 2001 WL 640973, at *3 (N.D.Ill.2001).

■ The ADA designates three separate categories of disability: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Moore*, 221 F.3d at 950. If Plaintiff's condition does not rise to the level of a disability as defined by the ADA, he cannot prevail on his ADA claim even if Defendants terminated him expressly because of his condition. *Moore*, 221 F.3d at 950. An ADA claimant must specify which major life activity has been limited and only those grounds specifically raised will be considered by this court. *See Sinkler v. Midwest Prop. Management Ltd. P'ship*, 209 F.3d 678, 683 (7th Cir.2000).

Here, in his Response to Defendants' Motion for Summary Judgment, Plaintiff claims that he is actually disabled under subsection (A) of § 12102(2) because his back condition is a physical impairment that limits the major life activity of lifting and the major life activity of working. Plaintiff also claims that Defendants perceived his back condition as disabling under subsection (C) of § 12102(2). This court agrees with Defendants that the evidence falls far short of establishing a genuine issue of material fact as to either of Plaintiff's contentions.

### A. ACTUAL DISABILITY

■ Plaintiff first argues that his back condition, degenerative lumbar spine disease, substantially limits the major life activity of lifting. Major life activities are

"functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). This list is not exhaustive, and other major life activities include "sitting, standing, lifting, reaching." 29 C.F.R. Pt. 1630, App. § 1630.2(i) (2001); *see also Wolz v. Deaton–Kennedy Co.*, 2001 WL 699096, *6 (N.D.Ill.2001); *Stone v. Sangamon County Sheriff's Dept.*, 168 F.Supp.2d 925, 931 (C.D.Ill.2001). A condition "substantially limits" a major life activity if the afflicted person is "either unable to perform, or significantly restricted as to the condition, manner or duration under which the individual can perform, a major life activity as compared to an average person in the general population." *Ryan v. St. Mary of Providence*, 2001 WL 1143249, at *1 (N.D.Ill.2001), *quoting Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 506 (7th Cir.1998).

■ In this case, the evidence shows that Plaintiff has been restricted from lifting more than 35 pounds because of his back condition. However, Plaintiff testified that he does lift his daughters, who weigh 35 and 50 pounds. He also testified that he has performed jobs which require some lifting. This court concludes that the evidence is not sufficient to raise a genuine issue of material fact regarding whether Plaintiff is "significantly restricted" in his ability to lift when compared to an average person in the general population. *See Hempstead v. Rockford Hous. Auth.*, 2001 WL 1380514, at *3 (N.D.Ill.2001) (evidence of 25–pound lifting restriction, without more, is insufficient to establish that the plaintiff is substantially limited in a major life activity); *Kause v. Alberto–Culver Co.*, 1999 WL 756131, at *6 (N.D.Ill.1999) (30–pound weight restriction insufficient to constitute a disability).

As noted, Plaintiff also argues that his back condition substantially limits the major life activity of working. Plaintiff primarily relies on *Thompson v. Dot Foods, Inc.*, 5 F.Supp.2d 622 (C.D.Ill.1998).

■■ In discussing the major life activity of working, "substantially limits" means the individual is significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes. *Contreras v. Suncast Corp.*, 237 F.3d 756, 762 (7th Cir.2001), *cert. denied*, —— U.S. ——, 122 S.Ct. 62, —— L.Ed.2d —— (2001). "Thus an individual is not substantially limited in working just because he or she is unable to perform a particular job for one employer, or because he or she is unable to perform a specialized job or profession requiring extraordinary skill, prowess or talent;" instead, "the impairment must substantially limit employment generally." *Contreras*, 237 F.3d at 762, *quoting* 29 C.F.R. Pt. 1630, App. § 1630.2(j) (1999). Therefore, a plaintiff has the burden of presenting evidence to demonstrate that his impairment limited his ability to perform an entire class of jobs. *Contreras*, 237 F.3d at 762–63. This "inquiry is an individualized one: whether this plaintiff's impairment constitutes a significant barrier to his employment." *Moore*, 221 F.3d at 953.

In *Thompson*, the plaintiff was restricted from lifting more than 50 pounds and had a written statement from his physician which stated that switching the plaintiff, long term, to a more sedentary work status would be in his best interest. Based upon this evidence, the district court in that case determined that the plaintiff had shown that he was significantly restricted in performing a class or broad range of jobs. *Thompson*, 5 F.Supp.2d at 626. The court stated that, given the plaintiff's work restriction, "he could no longer perform the essential functions of an over-the-

road truck driver, not only for Dot Foods, but for any employer." *Thompson,* 5 F.Supp.2d at 626. The court granted summary judgment for the defendant, however, because it concluded that the plaintiff could not, even with a reasonable accommodation, do the job for which he was hired. *Thompson,* 5 F.Supp.2d at 626–27. Moreover, the district court specifically noted that the Fourth and Eighth Circuits had ruled that a lifting restriction did not constitute a significant restriction on one's ability to lift, work, or perform any major life activity. *Thompson,* 5 F.Supp.2d at 626, *citing Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346, 349 (4th Cir.1996); *Aucutt v. Six Flags Over Mid–America,* 85 F.3d 1311, 1319 (8th Cir.1996). The court noted that the Seventh Circuit had not adopted a similar position but stated that, obviously, "if the Seventh Circuit were to adopt the Fourth and Eighth Circuit's position, [the plaintiff] would not be disabled as defined by the ADA, and his claim would end here." *Thompson,* 5 F.Supp.2d at 626 n. 12.

Unfortunately for Plaintiff, the Seventh Circuit has recently adopted this position. In *Contreras,* the plaintiff contended that he was substantially limited in the major life activity of working because he was unable to lift in excess of 45 pounds for a long period of time, was unable to engage in strenuous work and was unable to drive a forklift for more than four hours a day. *Contreras,* 237 F.3d at 763. The Seventh Circuit stated that "other circuits faced with similar sets of facts have found those limitations do not qualify as a substantial limitation on working (and thus a disability under the ADA)." *Contreras,* 237 F.3d at 763. The Seventh Circuit concluded that the district court was correct to reject the plaintiff's claim that he was substantially limited in the major life activity of working. *Contreras,* 237 F.3d at 763.

The Court in *Contreras* specifically cited *Williams* and *Aucutt.* The Court noted that the Court in *Williams* held as a matter of law that a "twenty-five pound lifting limitation—particularly when compared to an average person's abilities—does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity." *Contreras,* 237 F.3d at 763, *quoting Williams,* 101 F.3d at 349. The Court further noted that the Court in *Aucutt* held that the plaintiff failed to show he was substantially limited in major life activities where "a 25–pound lifting restriction was the only medical limitation placed upon [plaintiff's] activities." *Contreras, quoting Aucutt,* 85 F.3d at 1319. The Court in *Contreras* also relied upon similar holdings in *Ray v. Glidden Co.,* 85 F.3d 227, 228–29 (5th Cir.1996), and *Wooten v. Farmland Foods,* 58 F.3d 382, 384, 386 (8th Cir.1995).

■ In this case, the evidence shows that Plaintiff was given a permanent restriction on lifting more than 35 pounds. There is no evidence of any other restriction on Plaintiff's ability to work. Based upon *Contreras,* this evidence is insufficient to show that he was substantially limited in the major life activity of working. Plaintiff's reliance on the holding in *Thompson* is clearly misplaced based upon the recent contrary holding by the Seventh Circuit in *Contreras.* Based upon *Contreras,* a plaintiff's weight restriction and restriction from strenuous work, standing alone, is not sufficient to demonstrate that the plaintiff was precluded from a broad class of jobs. *Andrews v. College Bd.,* 2001 WL 1000724, at *7 (N.D.Ill.2001); *see also Cole v. Mead Packaging Div. of Mead Corp.,* 2001 WL 290612, at *9–10 (N.D.Ill. 2001); *O'Rourke v. Roadway Express, Inc.,* 2000 WL 1209423, at *3 (N.D.Ill. 2000); *Tripodi v. Bill Kay Old's Honda,* 1999 WL 299901, at *5 (N.D.Ill.1999).

Plaintiff argues, however, that a genuine issue of material fact exists regarding whether he is substantially limited in the major life activity of working because the evidence shows that, on August 29, 1995, his doctor advised him to change vocations because of his back problem. In *Best v. Shell Oil Co.*, 107 F.3d 544 (7th Cir.1997), the plaintiff worked as a truck driver and injured his knee. The Seventh Circuit found that there were enough facts to raise a genuine issue of fact on the impact of the plaintiff's knee injury on the major life activity of working. *Best,* 107 F.3d at 548. The Court specifically relied upon the fact that the plaintiff's doctor recommended that the plaintiff consider alternative work duties on a full time basis for the future. *Best,* 107 F.3d at 548. However, the court also relied upon other facts, including the fact that the defendant's plant manager told Plaintiff that he should find another line of work. *Best,* 107 F.3d at 548. Moreover, in this case, the doctor's recommendation was made shortly after the injury occurred. As time went on, the only permanent restriction imposed on Plaintiff was the restriction on lifting more than 35 pounds. This court concludes that this very specific restriction is not sufficient "to show that his back injury limits his ability to engage in a class of jobs." *Contreras,* 237 F.3d at 763 n. 5. This court concludes that this is "not one of the rare cases in which [Plaintiff's] impairments are so severe that [his] substantial foreclosure from the job market is obvious." *See EEOC v. Rockwell Int'l Corp.*, 243 F.3d 1012, 1017 (7th Cir.2001); *Ryan,* 2001 WL 1143249, at *4.

Plaintiff's cause is also undermined by the fact that he subsequently obtained employment as a truck driver. *See O'Rourke,* 2000 WL 1209423, at *3; *see also Sinkler,* 209 F.3d at 685–86 (facts in the record demonstrated that a broad range of jobs remained open to the plaintiff where she was able to find a job in the same line of work after her discharge); *Wolz,* 2001 WL 699096, at *6 (plaintiff's own job history suggested she was not precluded from a broad range of jobs). Moreover, Plaintiff's argument is further undermined by his testimony that he was able to perform his job at ADM Trucking several weeks after his injury. *See O'Rourke,* 2000 WL 1209423, at *3 (plaintiff admitted he was not precluded from performing any jobs as a result of his permanent work restrictions); *Puoci v. City of Chicago,* 81 F.Supp.2d 893, 897 (N.D.Ill.2000) (plaintiff's admission that he was able to perform the duties of his job undermined his argument that he was substantially limited in the major life activity of working).

For all of the reasons stated, this court concludes that Plaintiff has not shown that he was actually disabled under subsection (A) of 42 U.S.C. § 12102(2).

## B. "REGARDED AS" DISABLED

Plaintiff also argues that Defendants regarded Plaintiff as disabled by denying him an opportunity to return to his job as a result of his back injury. Plaintiff therefore contends that he is disabled under 42 U.S.C. § 12102(2)(C). The Interpretive Guidance to the regulations implementing § 12102(2)(C) state:

[A]lthough an individual may have an impairment that does not in fact substantially limit a major life activity, the reaction of others may prove just as disabling.

.        .        .        .        .

[I]f an individual can show that an employer or other covered entity made an employment decision because of a perception of disability based on "myth, fear or stereotype," the individual may satisfy the "regarded as" part of the definition of disability.

*Moore,* 221 F.3d at 953–54, *quoting* 29 C.F.R. Pt. 1630, App. § 1630.2(*l* ) at 352 (1999). Therefore, in order for Plaintiff to fall within the language of § 12102(2)(C), it is not enough for Plaintiff to show that Defendants were aware of his impairment, he must show that Defendants knew of the impairment and believed he was substantially limited because of it. *Moore,* 221 F.3d at 954. The Seventh Circuit has stated:

> Even if [the employer] had fired [the plaintiff] because of his injury, he would not necessarily have a claim under the ADA. "The Act is not a general protection of medically afflicted persons. . . . [I]f the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation."

*Moore,* 221 F.3d at 954, *quoting Harrington v. Rice Lake Weighing Sys., Inc.,* 122 F.3d 456, 460 (7th Cir.1997).

██ In this case, Plaintiff has only presented evidence that Defendants knew about his back injury and subsequently terminated his employment. Plaintiff has not presented this court with any evidence that Defendants perceived him as impaired in performing a broad range of jobs in various classes, or substantially limited regarding any other major life activity. *See Moore,* 221 F.3d at 954. As in *Moore,* the record here reflects that Defendants' actions were a response to a specific restriction imposed by Plaintiff's doctor and were not based upon myth, fear or stereotype. *See Moore,* 221 F.3d at 954. In light of the permanent restriction imposed restricting Plaintiff from lifting more than 35 pounds, Defendants simply determined that Plaintiff could no longer perform the job of over-the-road driver at ADM Trucking. *See Moore,* 221 F.3d at 954–55. The evidence was not sufficient to show that Defendants perceived Plaintiff as being precluded from a wide range of jobs and was not sufficient to show that Defendants regarded Plaintiff as disabled. *See Moore,* 221 F.3d at 955; *Sinkler,* 209 F.3d at 687; *Hempstead,* 2001 WL 1380514, at *3; *O'Rourke,* 2000 WL 1209423, at *4. Accordingly, based upon *Moore,* Plaintiff has not shown that he is disabled for purposes of the ADA. *See Moore,* 221 F.3d at 955.

## C. CONCLUSION

Because Plaintiff has failed to establish the first element of his prima facie case, that he was disabled within the meaning of the ADA, he is not entitled to recover under the ADA. *See Amadio v. Ford Motor Co.,* 238 F.3d 919, 929 (7th Cir.2001); *Moore,* 221 F.3d at 950; *Stone,* 168 F.Supp.2d at 932. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim. Therefore, Plaintiff's Motion for Summary Judgment seeking summary judgment on the issue of ADM's joint liability under the ADA is MOOT.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion for Summary Judgment (# 50) is GRANTED.

(2) Plaintiff's Motion for Summary Judgment (# 52) on the limited issue of ADM's liability is therefore MOOT.

(3) This case is terminated. The parties shall be responsible for their own court costs.