# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 3, 2011

Lyle W. Cayce
Clerk

No. 10-20620
Summary Calendar

RICHARD HODGES,

Plaintiff-Appellant,

v.

ISP TECHNOLOGIES, INCORPORATED, Incorrectly Identified as ISP
Texas City,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-962

Before KING, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:[*]

The plaintiff-appellant Richard Hodges appeals from the district court's dismissal of his Americans with Disabilities Act (ADA) claim for failure to establish that he was disabled under the Act. We AFFIRM.

**I.**

In 1994, Hodges was seriously injured in an industrial accident that left him with thirty-four percent whole body impairment, including limited range

---

[*]Pursuant to the 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 10-20620

and motion of his left elbow and wrist and lost grip strength of his right hand. Since the accident, and before beginning work at the defendant-appellee ISP Technologies Inc. (ISP), Hodges held a series of physically demanding jobs. Two years after the accident, Hodges began working as a maintenance planner and electrical technician.  Hodges then worked for some time as an electrical technician. He was also employed as a production technician operator. Hodges never required, or requested, accommodations to help him perform those difficult jobs over the years.

In 2006, Hodges began working for ISP as a production technician, a job similar to those he had held previously.  Hodges informed ISP in writing of his impairment at orientation, but admitted in conversation with human resources that the impairment "had never caused [him] any problems . . . associated to [his] jobs."  The production technician job required "walking, bending, reaching and climbing to perform basic duties; bending and stooping while checking pumps, valves, and motors; moving pallets of drums with a hand truck; filling, shoving, and sealing drums of copolymer and solvents up to 550 pounds each; maneuvering and rolling the 550-pound drums; climbing on and off a tow motor; and climbing storage tanks and a tank wagon loading rack."

During his first week at ISP, Hodges reported to his foreman, Eloi Huerta, that he had some discomfort in his left elbow.  The discomfort allegedly arose from the repetitive motions at the filling and lidding stations in the drum assembly room.  Hodges maintained that he could do his job, but not without some discomfort.  Huerta assured Hodges that he was doing a good job and was not a "weak link."  Hodges did not ask for any assistance from Huerta.

Hodges spoke with his union representative about his difficulties.  He also

No. 10-20620

met with ISP's safety supervisor, who suggested that Hodges use a platform as an accommodation. However, Hodges said he had tried everything and felt this accommodation would not work. Hodges said he would continue working as production technician, but he was certain the discomfort would continue.

Hodges then met with Brian Johnson, a maintenance supervisor, and ISP's human resource supervisor about a "generalist" position Huerta mentioned as a possible alternative. The generalist position had many of the same requirements as the production technician: "walking, bending, reaching, and climbing; moving pallets of drums with a hand truck; the ability to lift 100 pounds; filling, shoving, and sealing drums of up to 550 pounds each; and maneuvering and rolling drums of up to 550 pounds." Johnson advised Hodges of the similarities between the two positions and told him that it probably would not solve Hodges's problems. Hodges told Johnson that he could still perform the duties of the generalist position, but because the generalist position was no longer available, told Johnson, "I understand if you don't have another spot for me I'll just go on down the road."

In his deposition, Johnson testified he believed that Hodges had quit. Hodges testified that he did not want to end his employment with ISP, but he believed he had been fired. Hodges never signed termination papers with ISP. Also, ISP never contacted Hodges after that last meeting with Johnson. Hodges took another similar job two months later, and after leaving that job returned to work for a previous employer—in a job similar to his job at ISP—within the next year.

In March 2008, Hodges filed this disability discrimination case against ISP, alleging violations of the ADA. 42 U.S.C. § 12131 et seq. ISP moved for

3

No. 10-20620

summary judgment, asserting that Hodges does not qualify as an individual with a disability under the ADA. The district court granted ISP's motion for summary judgment. The court first examined the threshold question of whether Hodges could show that he had a disability under ADA. The court determined that because Hodges was not limited from working a "broad range" of jobs, Hodges was not limited in the major life activity of work. As a result, the district court decided that Hodges could not establish that he was disabled under any of the prongs of the ADA disability test. Hodges filed this appeal, disputing the district court's finding that he failed to raise a genuine issue of material fact as to whether he was disabled under the terms of the ADA.

## II. DISCUSSION

This court reviews a district court's grant of summary judgment *de novo. Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The facts and evidence must be taken in the light most favorable to the non-moving party. *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010).[1]

On appeal, Hodges disputes the district court's decision that he failed to meet the threshold requirement of showing that he is disabled under the terms of the ADA. *See Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996). Specifically, he asserts that he is disabled because he is substantially limited in the major life activity of working. In the alternative, he asserts

---

[1] Although the parties dispute whether Hodges was fired from his job or whether he quit, that dispute is not material to the resolution of this appeal.

4

No. 10-20620

that—whether or not he was actually disabled—ISP regarded him as disabled, and therefore improperly discriminated against him.

To bring a claim under the ADA, Hodges must establish that "(1) he is disabled within the meaning of the ADA, (2) he is qualified and able to perform the essential functions of his job, and (3) his employer fired him because of his disability." *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010).[2] Any analysis of an ADA claim begins with a determination of whether the plaintiff is disabled. *Sutton v. United Air Lines*, 527 U.S. 471, 481 (1999). The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

"[W]hether a person has a disability under the ADA is an individualized inquiry." *Sutton*, 527 U.S. at 483. However, "[m]erely having an impairment does not make one disabled . . . ." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002). The impairment must "substantially limit" a major life activity. *Id.* "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton,* 527

---

[2] Hodges contends that the district court improperly applied old law. In 2008, Congress passed the Americans with Disabilities Act Amendments Act (ADAAA). This Act effectively superceded the Supreme Court's narrow construction of "disability" set forth in *Sutton* and subsequent cases. Hodges argues that the ADAAA should apply retroactively to his case. However, this court has found "that Congress [did not intend] the ADAAA to apply retroactively." *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 857 (5th Cir. 2010). Hodges's Complaint was filed almost a year before the ADAAA became effective. Accordingly, this court is bound to follow *Sutton* and its companion cases and to apply the pre-ADAAA definition of "disability." Hodges's contention is therefore without merit. *See Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010). In any event, Hodges does not explain why adopting the new interpretation of disability—which in part makes it easier to bring cases arising from episodic disability—would make any difference to his case.

No. 10-20620

U.S. at 491. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* at 491; *see also Bridges v. City of Bossier*, 92 F.3d 329, 334 (5th Cir. 1996) (holding that a broad class or range "implies more than two job types.")

Here, there is nothing in the record to show that Hodges is excluded from a broad class of jobs and therefore substantially limited in the major life activity of work.  As the district court observed, Hodges has taken many jobs that are similar to his job at ISP, including production technician operator, shift electrician, maintenance planner, instrument electrician, and electrical technician.  The fact that he can work all those jobs precludes a finding that Hodges is disabled in the major life activity of working or has a record of such impairment for the purposes of the ADA. *See* 42 U.S.C. § 12102(1)(A), (B). Nor can Hodges point to anything in the record to show that he is excluded from a broad range of jobs.

Hodges's alternative contention that the district court erred in deciding that he was not "regarded as" disabled under the ADA fails for similar reasons. *See* 42 U.S.C. § 12102(1)(C). An individual is "regarded as" disabled when either "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton*, 527 U.S. at 489. Thus, to prevail, Hodges must show that his employer mistakenly regarded him as "[u]nable to perform a major life activity that the average person in the general population can perform." *Kemp*, 610 F.3d at 237 (internal quotations omitted).  Hodges asserts that ISP improperly believed he was substantially limited in the major life activity of working.  The record, however, does not

6

support Hodges's assertion that ISP regarded him as "substantially limited" in his ability to work in a broad range of jobs, as required by our precedent. Even assuming that ISP actually believed Hodges incapable of working as either a production technician or a generalist, the most Hodges can point to in the record is that ISP believed him unable to perform one kind of job involving arduous lifting. That is not sufficient to support a disability claim under the ADA's "regarded as." *See Ray v. Glidden Co.*, 85 F.3d 227, 229-30 (5th Cir. 1996) (holding that restrictions on heavy lifting did not establish a record of disability or "regarded as" disability because the inability to perform heavy lifting did not render the employee substantially limited in the major activities of lifting or working); *cf. EEOC v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 730 (5th Cir. 2007) (finding disability under the "regarded as" test where the defendant mistakenly believed the plaintiff was unable to walk, and was therefore limited from all jobs at the defendant's factory).

For the foregoing reasons, the judgment of the district court is AFFIRMED.